


**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Christopher Flagg* | *36 S. Charles Street* | *DIRECT: 410-209-4871* |
| *Special Assistant United States Attorney* | *Fourth Floor* | *MAIN: 410-209-4800* |
| *Christopher.Flagg@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-0717* |

October 10, 2014

William B. Purpura, Jr.
8 East Mulberry Street
Baltimore, Maryland 21202

Re:      United States v. Sean Wilson, Case No. CCB-14-0334

Dear Mr. Purpura:

This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by October 24, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, conspiracy to distribute and possess with intent to distribute 1 kilogram or more of a mixture or substance containing heroin, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.      on or around the dates charged in the Indictment, within the
            District of Maryland and elsewhere,

    b.      an agreement existed between two or more persons to
            violate the federal drug laws by distributing and possessing
            with the intent to distribute 1 kilogram or more of a mixture
            or substance containing a detectable amount of heroin; and

    c.      the Defendant knowingly joined in that agreement.

### Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is a term of imprisonment of life, with a mandatory minimum term

1

of ten years; a fine of ten million dollars, and a term of supervised release of at least five years and no more than five years. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

<u>Waiver of Rights</u>

4.    The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.    If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.    If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.   Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.    If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.    The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.    If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to

---

[1]    Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.    If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

        5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

        6.    This Office and the Defendant understand, agree and stipulate to the Statement of Facts contained in Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

        a.    The parties stipulate and agree that, pursuant to U.S.S.G. § 2D1.1(c)(1), the offense level for the quantity of heroin at issue is thirty-eight (38).

        b.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. **Therefore, the Defendant's**

**anticipated adjusted offense level is 35.** This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

c.      In anticipation of the forthcoming changes to the Drug Quantity Table in the United States Sentencing Guidelines 2D1.1, the United States hereby agrees not to oppose a 2-level downward variance. In exchange, the defendant agrees not to seek a sentence reduction under 18 U.S.C. § 3582(c)(2) based on the retroactive application of Amendment # 3 to the USSG submitted to Congress on April 30, 2014. **Therefore, the Defendant's anticipated final adjusted offense level is 33.**

7.      The Defendant understands that there is no agreement as to his criminal history or criminal history category and that his criminal history could alter his offense level if he is a career offender, armed career criminal, or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.      This Office and the Defendant agree that with respect to the calculation of criminal history and the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the Defendant intends to seek a sentence below the advisory guidelines range based on application of the 18 U.S.C. § 3553(a) factors, the Defendant agrees to notify the Court, the United States Probation Officer and government counsel at least ten days in advance of sentencing of any facts or issues he intends to raise.

<u>Rule 11 (c) (1) (C) Plea</u>

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence **between 121 and 188 months'** imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

<u>Obligations of the United States Attorney's Office</u>

10.     At the time of sentencing, this Office will recommend a sentence between 121 and 188 months' imprisonment, as agreed upon by the parties. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

11.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the

Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it is above 188 months' imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is it below 121 months' imprisonment.

c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

13.     The Defendant agrees to forfeit to the United States all of his right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including the following:

a.     U.S. currency in the amount of $464,283.00 seized from 14 Pellinore Court, Pikesville, Maryland on or about June 30, 2014 (DEA Asset ID # 14-DEA-600687);

b.     U.S. currency in the amount of $74,980.00 seized from 8908 Falcon Ridge Drive, Randallstown, Maryland on or about June 30, 2014 (DEA Asset ID # 14-DEA-60069);

c.     U.S. currency in the amount of $9,546.00 seized from Sean WILSON on or about June 30, 2014 (DEA Asset ID # 14-DEA-600685 and 14-DEA-602316);

d.     2004 Jeep Grand Cherokee bearing Maryland registration tags 40419CB (DEA Asset ID # 14-DEA-602037), and

e.     2010 Cana motorcycle bearing Maryland registration tags D58657 (DEA Asset ID # 14-DEA-604738).

14.     The Defendant agrees to assist fully the United States in the forfeiture of the foregoing assets. The Defendant agrees to take all steps necessary to pass to the United States clear title to these assets, including but not limited to executing any and all documents necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding.

15.     The Defendant knowingly waives all constitutional, legal and equitable defenses to the forfeiture of the foregoing assets. It is further understood that, in the event that the United States files a civil action pursuant to 21 U.S.C. § 881 or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the Defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any such claim. It is further understood that the Defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

16.     The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The United States reserves the right to proceed against any remaining money, property, or assets not identified in this Plea Agreement.

<u>Obstruction or Other Violations of Law</u>

17.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

18.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

19.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By:

Christopher Flagg
Special Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/4/2014
_____
Date

_____
Sean Wilson

I am Sean Wilson's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

Nov. 4, 2014
_____
Date

_____
William B. Purpura, Jr.

Attachment A

The United States would prove the following facts beyond a reasonable doubt at trial:

Beginning no later than September 2013 and ending no earlier than June 30, 2014, in the District of Maryland and elsewhere, the Defendant, Sean WILSON, was a member of a conspiracy to distribute and possess with the intent to distribute 1 kilogram of more of heroin. The Defendant engaged in the above conspiracy with Fred BROOKS and others.

Drug Enforcement Administration (DEA) investigators in New Orleans and Baltimore identified the Defendant as a heroin distributor in the Baltimore, Maryland area being supplied by the BROOKS drug trafficking organization (BROOKS DTO). Based on the investigations of DEA New Orleans and DEA Baltimore, investigators determined that BROOKS was engaged in the trafficking of multi-kilogram shipments of heroin from a Mexican source of supply.

In furtherance of the conspiracy, the Defendant would coordinate with BROOKS to obtain kilogram quantities of heroin from a Mexican source of supply. The heroin would be distributed to co-conspirators in Maryland by way of Chicago, Illinois. The heroin would arrive in the Chicago area in automotive batteries containing approximately four to five kilograms of heroin packaged inside. Maryland-based members of the conspiracy, including Timothy MCDERMOTT and Phillip WHEELER, would travel to the Chicago area to retrieve the heroin. On other occasions, Chicago-based members of the conspiracy, including Salomon TERAN and Vicente MARIACA-TERAN, would travel to Maryland to deliver the heroin and retrieve money for prior heroin deals. Some of these transactions would be coordinated by BROOKS and the Defendant.

During the months of February and March of 2014, pursuant to a lawfully issued court wiretap authorization, investigators intercepted telephone communications between BROOKS, MCDERMOTT, and the Defendant. Through those intercepted communications investigators learned that MCDERMOTT had been traveling to the Chicago area on a regular basis at the direction of BROOKS to obtain kilogram quantities of heroin for the Defendant and others in the BROOKS DTO.

In the days prior to March 28, 2014, wiretap communications revealed that MCDERMOTT made a trip to the Chicago area. On March 28, 2014, investigators intercepted communication over MCDERMOTT's telephone that revealed that MCDERMOTT would be meeting with a then unknown male, later identified as James BRYANT, to distribute an amount of heroin. Investigators conducted surveillance of MCDERMOTT and observed him meet with BRYANT. After the meet, investigators followed BRYANT and directed uniformed officers to conduct a traffic stop on the vehicle. During this stop, officers conducted a search of BRYANT's vehicle and seized approximately two kilograms of heroin.

Three days later, on March 31, 2014, agents intercepted a conversation between BROOKS and the Defendant. During the conversation, BROOKS and the Defendant discussed the arrest of BRYANT. The Defendant assured BROOKS that he had a safe location for them to conduct future drug transactions. The conversation concluded with the Defendant telling BROOKS that he would contact BROOKS once he gathered the rest of the money from prior

drug sales. Later that same day, the Defendant texted BROOKS the following: "Thatl astc heck was 76880 he pic up thurs." Investigators believe that the Defendant sent this text message to inform BROOKS that the last amount of the outstanding drug debt owed to BROOKS was for $76,880.00.

During the months of May and June 2014, pursuant to a lawfully issued court wiretap authorization, investigators intercepted telephone communications occurring over BROOKS's and Defendant's telephones.

On May 22, 2014, wiretap communications revealed a text message from BROOKS to the Defendant. The content of the message was, "Here is the number for Country for that l battery 252-550-0629". Investigators learned through the course of the investigation that BRYANT was referred as "Country" by co-conspirators and that automotive batteries were being used to conceal and transport kilograms of heroin.

On June 29, 2014, investigators intercepted communications between BROOKS and the Defendant which indicated that a money transaction would be occurring the next day. Investigators located a stash location, 14 Pellinore Court, Pikesville, Maryland, where they believed the transaction would occur.

On June 30, 2014, investigators established surveillance in the area of JONES' residence, 9007 Balin Court, and 14 Pellinore Court, the suspected stash location, both located in Pikesville, Maryland. Investigators observed Carvell JONES walk from his residence to the area of 14 Pellinore Court and enter the apartment. Investigators then observed the Defendant enter 14 Pellinore Court. Shortly thereafter, investigators observed the Defendant leave the stash location. JONES then left the stash location a brief time later.

Investigators obtained search warrants for various locations involved in the conspiracy, including 14 Pellinore Court and the Defendant's residence, 8809 Falcon Ridge Drive, Randallstown, Maryland.

Upon searching 14 Pellinore Court, investigators located and recovered approximately 10 kilograms of heroin packaged into 3" by 3" squares, a money counter, as well as $464,283 in U.S. Currency.

At approximately 11 p.m. on June 30, 2014, a Ford F-250 King Ranch pickup truck, bearing Illinois registration tags 1065714, being operated by TERAN and MARIACA-TERAN arrived in the area of 14 Pellinore Court. Based upon intercepted communications, investigators knew that the money pick-up that was supposed to occur around 4 p.m. had been delayed. Investigators initiated a K-9 scan of the truck and the K-9 alerted to the presence of narcotics. Investigators located $89,080 in U.S. Currency hidden in pipes in back of truck.

Upon searching 8809 Falcon Ridge Drive, investigators located and recovered a hydraulic press used to package heroin, as well as $74,980.00 in U.S. Currency.

Additional calls and surveillance proving additional conduct by the Defendant for purposes of transacting illegal narcotics would be proven by the government if this case went to trial.

10

The parties stipulate that based on the facts readily provable by the government, the Defendant, along with other members of the conspiracy, conspired to distribute 30 kilograms or more of heroin. The Defendant admits that such quantity was within the scope of the conspiracy and reasonably foreseeable to him.

Christopher Flagg
Special Assistant United States Attorney

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

11/4/2014
Date

Sean Wilson (Defendant)

I am Sean Wilson's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

Nov. 4, 2014
Date

William B. Purpura, Jr. (Counsel)

11